# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| DAVID EARL PONDER | § | |
| --- | --- | --- |
| | § | |
| V. | § | A-14-CV-336-LY |
| | § | |
| AVALON CORRECTIONAL | § | |
| SERVICES, et al. | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court are Defendants' Motion for Summary Judgment (Dkt. No. 58); Defendants' Motion to Dismiss for Failure to State a Claim (Dkt. No. 59); Plaintiff's Response (Dkt. No. 61); Plaintiff's Supplement to Response–Basham (Dkt. No. 62); Plaintiff's Supplement to Response–Avalon and Smith (Dkt. No. 63); Plaintiff's Supplement to Response–Lovelace (Dkt. No. 64); Plaintiff's Supplement to Response–Serrano (Dkt. No. 65); Plaintiff's Supplement to Response–Parsons (Dkt. No. 66); Defendants' Replies (Dkt. Nos. 67 & 68); and Plaintiff's Motion to Deny Dismissal (Dkt. No. 69). The District Court these motions to the undersigned report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(A) & (B), Fed. R. Civ. P. 72, and Rule 1(d) of Appendix C of the Local Rules.

## I. BACKGROUND

Plaintiff David Earl Ponder brings this suit against Avalon Correctional Services (Avalon), its founder Donald E. Smith, and employees Greg Basham, Loy Serrano, Jeannie Parsons, Max Goodale, and Ben Lovelace. In his complaint, he alleges that the defendants repeatedly deprived him of his rights under the Constitution. Ponder seeks monetary damages of at least $2.6 million,

including at least $2 million for physical health damages, $75,000 for mental health damages, $500,000 for intentional infliction of emotional distress, and $25,000 in punitive damages.

A.     **Factual Background**

Ponder's claims arise from his stays at halfway houses owned and operated by Avalon. He was first a resident at Avalon's Fort Worth facility during a probationary period following his release from prison. On or about March 16, 2012, several of Avalon employees had reported to Ponder's parole officer that he had violated the terms of his parole. After a hearing, Ponder was arrested and spent thirty-one days in Tarrant County Jail. He returned after this time to the Avalon facility. Shortly after his return, he suffered massive internal bleeding and was hospitalized for a week. When he returned, Ponder filed a grievance for the loss of his property, which he alleges was discarded in violation of Avalon's policy while he was in the hospital. The grievance was successful, and his belongings were replaced.

> Some unspecified time after this successful grievance, unnamed Avalon personnel
>
> began retaliating against the Plaintiff. At first by confiscating items during searches that were clearly approved items according to Avalon regulations, then later by charging the Plaintiff with petty bogus "violations" that caused him to be restricted from leaving the facility. This effectively prevented the Plaintiff from pursuing his SSDI benefits claim, obtaining alternate living arrangements, and because of fear and intimidation, from seeking further medical, and mental health services. [sic]

Dkt. No. 7 at 5. Ponder alleges that Defendants Greg Basham, Loy Serrano, and Jeannie Parsons "were aware of the retaliations against the Plaintiff, and did nothing to correct or discourage the personnel involved, but yet became a part of the constant harassment." *Id*. The second retaliatory event occurred shortly thereafter. The complaint alleges that

> [w]hen the Plaintiff filed additional formal grievances against lower level Avalon personnel these Defendants [Basham, Serrano, and Parsons] engaged in quashing the

2

> grievances, ordering the Plaintiff to stop filing grievances, conducted "kangaroo hearings" on the Plaintiff's appeals, and ignored eyewitnesses to the misbehavior of Avalon "client monitors" and other lower level supervisory personnel. [sic]

*Id*. at 5–6. While it is unclear, the complaint can be read to indicate that the retaliatory acts of Basham, Serrano, and Parsons were motivated, at least in part, by Ponder's initial, successful grievance.

The third retaliatory event also encapsulates Ponder's claim that Defendants interfered with his mail. Sometime in mid- to late-May 2012, Ponder "discovered that his name was not being announced at mail call, and that his mail was being returned to sender after only twenty-four hours," despite the fact that "Avalon rules state that resident mail is kept 72 hours." *Id*. at 6. Furthermore, Ponder's "outgoing mail was not being sent," forcing him to resort to "smuggl[ing] out mail via other residents when they left on their own day passes." *Id*. When Ponder learned of Defendants' actions, he "confronted Jeannie Parsons with his concerns." *Id*. Parsons "admitted that the Plaintiff's mail had indeed been interfered with, and in anger made the statement 'that since I [Ponder] was complaining so much about my mail that they (herself and other Avalon employees) would just start sending back everyone's mail in twenty-four hours.'" [sic] *Id*.

Upon eventual receipt of his mail, Ponder "learned that a deadline for answering and responding to requirements of The Social Security Department had lapsed, and his application was denied, causing [him] $14,000 dollars lost back pay." [sic] *Id*. Ponder also discovered that "an attorney he had attempted to commission had attempted to contact him;" this attorney "could also have won [Ponder the] benefits" he lost as a result of missing the filing deadline. *Id*. Though the complaint is unclear, it can be read to indicate that Ponder saw Parsons's interference with his mail as a retaliatory act done in response to his repeated use of Avalon's grievance procedures. Ponder

3

further alleges that, "[d]ue [to] this sudden knowledge of monetary loss, and also the constant harassment, loss of opportunities to obtain alternate housing, and constant emotional distress," he "suffered a severe and debilitating nervous breakdown and panic attack episode, leading again to hospitalization." *Id*. at 6–7.

The fourth and final event occurred following Ponder's arrival at Avalon's Austin facility. There, Defendants Max Goodale and Ben Lovelace, for reasons unstated,

> deprived [Ponder] of his freedom without just cause, and further caused monetary, and property losses in excess of $3000.00, and . . . contributed to [his] decline in mental and physical health. Both using the same tactics of bogus write-ups . . . and harassment, attempting to restrict the Plaintiff from SSI attorneys, and appointments to social services, and then on or about June 26th 2012 parole violated the Plaintiff without just cause. [sic]

*Id*. at 7–8. After a hearing, it was found that Ponder had not violated his parole, in part, Ponder claims, because neither Goodale nor Lovelace testified at the hearing.

**B.    Procedural History**

This Court has had the opportunity to address Ponder's claims on two prior occasions: first, in accordance with the frivolousness review required for all applications to proceed *in forma pauperis*; and second, pursuant to the Defendants' first motion to dismiss. In the Report and Recommendation granting Ponder *in forma pauperis* status and reviewing for frivolousness, the Court found that Ponder had made five claims: (1) the defendants deprived him of liberty without due process by reporting to law enforcement that he had violated the terms of his parole; (2) the defendants caused him bodily harm when they delayed in calling 911 emergency services because they believed he was "faking;" (3) the defendants destroyed his personal property; (4) the defendants retaliated against him for filing a formal grievance; and (5) the defendants interfered with his ability

to send and receive his mail. Dkt. No. 12 at 6. In the initial review, the Court found that the first three claims were frivolous and should be dismissed. Additionally, all claims based on events that arose prior to April 21, 2012, were dismissed subject to the two-year statute of limitations. The Court then ordered service on defendants for the last two claims.

After being served, the Defendants moved to dismiss the remaining two claims. Dkt. No. 39. In the subsequent Report and Recommendation, the Court found that Ponder's claim for mail interference should be dismissed for failure to state a claim, but that the claim for retaliation should survive. Dkt. No. 41. This Report and Recommendation was not adopted, and Ponder was given an opportunity to amend his complaint. In Ponder's Second Amended Complaint, he added a claim for false imprisonment. As such, the remaining claims before this Court are: (1) false imprisonment; (2) retaliation; and (3) interference with his mail. Additionally, Ponder alleges that Smith and Avalon are vicariously liable for the alleged constitutional violations. Defendants move to dismiss the remaining claims, or in the alternative, for summary judgment.

## II. LEGAL STANDARD

### A.     Rule 12(b)(6) Standard

Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also*, *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Supreme Court recently expounded on the *Twombly* standard,

explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2009). Finally, although this Court construes the briefs of *pro se* litigants liberally, a *pro se* litigant must still comply with the court rules of procedural and substantive law. *Bird v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981). *See also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("[W]hether the plaintiff is proceeding pro se or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (internal quotation marks and citations omitted), *cert. denied*, 537 U.S. 1200 (2003).

**B.     Summary Judgment Standard**

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508.

Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

### III. ANALYSIS

Defendants move to dismiss Ponder's remaining claims. First, they argue that Ponder's claims are barred by the statute of limitations. Second, Defendants contend that Ponder has failed to state a claim upon which relief may be granted. Alternatively, Defendants move for summary judgment.

**A.     Statute of Limitations**

First, Defendants argue that Ponder's claims that arose prior to May 23, 2012, should be dismissed pursuant to the statute of limitations. "Because there is no federal statute of limitations for § 1983 claims, district courts use the forum state's personal injury limitations period." *Moore*, 30 F.3d at 620. Under Texas law, the general personal injury limitations period is two years. TEX. CIV. PRAC. & REM. § 16.003(a). Ponder's Complaint was formally filed on May 23, 2014, and thus Defendants contend that all claims arising before May 23, 2012, are barred by the statute of limitations. However, as addressed in this Court's first Report and Recommendation, the appropriate date for this determination is actually the date that Ponder filed his motion to proceed *in forma pauperis*, April 21, 2014. *See Martin v. Demma*, 831 F.2d 69, 71 (5th Cir. 1987) ("Receipt of the complaint by the court clerk, rather than formal filing, determines the time of filing."); *Ynclan v. Dept. of Air Force*, 943 F.2d 1388, 1392 ("[A] delay by the clerk in stamping a complaint 'filed' due to the pendency of a motion to proceed IFP does not jeopardize the timeliness of the plaintiff's commencement of suit."). As such, all claims that arose prior to April 21, 2012 have already been dismissed. Dkt. No. 16. Defendants' argument therefore fails.[1]

**B.     False Imprisonment**

Defendants also move to dismiss Ponder's newly added claim for false imprisonment, in which Ponder contends that Basham and Lovelace both "acted without authority of lawful arrest."[2]

---

[1]Defendants also argue that the new claim for false imprisonment—as it was not added until the Second Amended Complaint—would be time barred. As Ponder has failed to state a claim upon which relief may be granted, the Court need not address this argument.

[2]Defendants also read a claim for false imprisonment against Serrano. The Court is unable to find any mention in Ponder's Second Amended Complaint that Serrano falsely imprisoned him.

Dkt. No. 49 at 3, 8. A claim for false imprisonment under Texas law requires a plaintiff to show: (1) willful detention; (2) without consent; and (3) without authority of law. *James v. Brown*, 637 S.W.2d 914, 918 (Tex. 1982). Ponder presents no facts to support this claim. Rather, he just points to a date, June 4, 2012, arguing that Basham and Lovelace held him without authority. However, his conclusory allegations that he was held—with no information as to where he was held or how—are insufficient to survive a motion to dismiss. Ponder merely argued that "Basham presented false testimony as truth to law enforcement personnel with the intent to revoke Plaintiff's parole." Dkt. No. 62 at 2. His claim against Lovelace is nearly identical. Dkt. No. 64 at 2.[3] Moreover, Ponder does not at any point allege that he was actually held by either Basham or Lovelace, stating instead that the "false warrant"—allegedly issued on the basis of false statements by Basham or Lovelace—was lifted three days later. A warrant (false or otherwise) is not sufficient to show that he was held in "willful detention," as required for false imprisonment. Thus, Ponder's claim for false imprisonment should be dismissed.

Additionally, it is unclear whether Ponder intended to assert a new claim or whether he is merely reasserting a claim made in his First Amended Complaint. There, Ponder argued that Basham and Lovelace deprived him of liberty without due process by reporting to law enforcement that he had violated the terms of his parole. It is likely this is Ponder's true intent as he argues that he "lost over 30 days freedom [sic]" due to the "false" reporting. Dkt. No. 49 at 9. Reading the complaint liberally, the Court assumes that Ponder is arguing that on June 4, 2012, either Basham

---

[3]There is also a question of what date he alleges he was falsely imprisoned by Lovelace. Lovelace is an employee at the Austin facility, and Ponder was not transferred there until after June 4, 2012. Moreover, Ponder appears to argue that he was held for thirty days for the violation that Lovelace reported, but provides no dates of this, nor is there any indication of when this could have occurred. Regardless, Ponder's claims are insufficient to survive a motion to dismiss.

9

or Lovelace (or both) reported a parole violation that allegedly resulted in his arrest. As the Court previously explained:

> "[B]ecause the loss of liberty as a parole violator does not occur until the parolee is placed under arrest," at which time he is entitled to not one but two hearings, no hearing or other process is required prior to being arrested for a parole violation. *See Malena v. Richard*, 117 F. App'x 355, 356 (5th Cir. 2004) (internal citations omitted). Accordingly, the mere reporting of a violation, even without a hearing, did not violate Ponder's right to due process.

Dkt. No. 12 at 7. Thus, to the extent Ponder is merely trying to rephrase his previously dismissed claims, the Court finds that this also should be dismissed.

**C.     Vicarious Liability**

Next, the Defendants move to dismiss Ponder's claims for vicarious liability. Defendants argue that Ponder does not allege a valid claim against Basham, Serrano, or Parsons for failure to act. Additionally, Defendants contend that Ponder cannot establish that either Smith or Avalon engaged in any unconstitutional actions; rather, his claims that Smith and Avalon acted with "deliberate indifference, gross negligence, and reckless disregard as to civil rights violations within" the facilities do not support a finding of liability under § 1983. Dkt. No. 49 at 5. The Court agrees.

**1.     Basham, Serrano, and Parsons**

First, Ponder alleges that the three employees failed to act, resulting in constitutional violations. Here, Ponder is alleging a form of supervisory liability under § 1983. As the Supreme Court has stated, a supervisor cannot be held liable under § 1983 under the doctrine of *respondeat superior*. *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 694 n.58 (1978). Rather, a supervisor may be liable only when "he implements unconstitutional policies that causally result in the constitutional injury." *Hinojosa v. Livingston*, 807 F.3d 657, 668–69 (5th Cir. 2015)

10

(quoting *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). Ponder's complaint alleges that Basham, Serrano, and Parsons were aware of the acts of retaliation and failed to intervene. There is no indication that either of the three employees implemented a policy which caused the injury. Indeed, on its most natural reading, the complaint indicates that the retaliatory acts occurred before Basham, Serrano, and Parsons were even aware of them, and that they occurred independently of any directives or orders from these Defendants. Finally, Ponder's assertion that Defendants "became a part of the constant harassment" is precisely the type of "unadorned, the-defendant-unlawfully-harmed me accusation" that the Court in *Iqbal* deemed insufficient to survive a motion to dismiss. 556 U.S. at 678.

### 2. Smith

Similarly, Ponder's conclusory allegations that Smith is "personally responsible his [sic] own negligence, the policies of his company, and the actions of his employees, agents, or vendors" is insufficient to state a claim that Smith was liable for the constitutional violations of his employees. Dkt. No. 7 at 8. Without more than this, Smith cannot be liable for the torts committed by employees, and Ponder does not provide a single example of unconstitutional policies implemented by Smith. *See Hinojosa*, 807 F.3d at 668 (allowing claims to move forward against the supervisors "for their own actions in promulgating—and failing to correct" the unconstitutional policies). In fact, all of Ponder's claims for constitutional violations appear to actually be claims of Avalon policy violations. As such, Ponder's claims against Smith should be dismissed.

### 3. Avalon

Finally, Ponder's claims against Avalon also fail. Here, he is asserting that he has evidence from "well over thirty Federal and State court cases that show both Defendant Smith and Defendant

Avalon have a history of, and a de facto policy" of civil rights violations. Dkt. No. 49 at 5. However, a corporation cannot be held liable for the torts of its employees under § 1983. *See Monell*, 436 U.S. at 91–92 (finding that a local government cannot be held liable on the basis of *respondeat superior*); *Callaway v. City of Austin*, No. A-15-CV-00103, 2015 WL 4323174 at *6 n.2 (noting that every circuit to address the issue has found that the holding in *Monell* applies to private corporations). Therefore, Ponder cannot claim that Avalon is liable for the torts of its employees unless "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690–91. Ponder does not point to a single policy, regulation, or decision officially adopted that would support a constitutional violation. Moreover, merely pointing to a number of other previously litigated cases (none of which were provided) that purportedly show a history of violations does not establish that, in this instance, Ponder's alleged constitutional claims arose from the deliberate indifference of Avalon. As such, all claims against Avalon should be dismissed.

**D.     Retaliation**

Finally, Ponder alleges claims for retaliation under § 1983. Here, he complains of three instances of retaliation: (1) that Parsons interfered with his mail; (2) that Parsons, Basham, and Serrano disregarded grievances filed by Ponder and discouraged him from filing additional grievances; and (3) that Lovelace and Goodale filed bogus write-ups, prevented him from meeting with an attorney and social services, and falsely reported a parole violation. Defendants move to dismiss, or in the alternative for summary judgment of, each of these claims.

Claims for retaliation have four separate elements which must be pled: (1) the exercise of a specific constitutional right; (2) the defendant's intent to retaliate against the plaintiff for exercising that right; (3) an adverse retaliatory act; and (4) causation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). An "inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (internal quotations omitted). Inmates need not allege that the retaliation *resulted in* the deprivation of a constitutional right; rather, actions motivated by a retaliatory animus are § 1983 violations even if such actions, when taken for different reasons, might have been legitimate. *Id.* at 1165. Thus, the key issue is whether the actions against the plaintiff were taken out of a desire, and with the intent, to retaliate. *See id.*; *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–84 (1977).

The Fifth Circuit has consistently held that "a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." *Id.* at 1164. Thus, Ponder has sufficiently alleged the exercise of a constitutional right from which a retaliation claim may be based.[4] Similarly, the Court finds that Ponder has alleged a "chronology of events from which retaliation may be plausibly be inferred" in his claims against Parsons, Basham, and Serrano *Id.* at 1166. Here, Ponder claims that he initially filed a successful grievance against Avalon personnel for confiscating his property, and that, shortly

---

[4]Defendants argue that there is no constitutional right to participate in grievance proceedings, and thus Ponder has failed to allege the invocation of a constitutional right. However, as noted above, the Fifth Circuit routinely finds that the use of the grievance proceedings may be the basis for claims for retaliation. *See, e.g.*, *Walker v. Savers*, 658 F. App'x 720, 726 (5th Cir. 2016) ("It is beyond dispute that '[a] prison official may not retaliate against or harass an inmate for complaining through the proper channels about a guard's misconduct.'"); *Woods*, 60 F.3d at 1166; *Morris*, 449 F.3d at 684; *Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989).

thereafter, lower-level Avalon personnel retaliated against him for filing that grievance. Ponder alleges first that Basham, Serrano, and Parsons were aware of this retaliation, and then that after Ponder continued to file grievances against lower-level Avalon personnel for these acts of retaliation, Basham, Serrano, and Parsons thereafter retaliated further against Ponder by disregarding these grievances and by discouraging him from filing additional grievances. Finally, Ponder claims that Parsons further retaliated by not giving Ponder his mail, and returning his mail after only twenty-four hours rather than seventy-two hours as required by the center's rules. Such a chronology of events supports the plausible inference that Defendants Basham, Serrano, and Parsons engaged in the alleged conduct out of a desire to retaliate against Ponder's repeated use of the grievance procedure.

On the other hand, Ponder's claims for retaliation against Goodale and Lovelace do not follow the same chronology that would support a finding of retaliatory animus. Ponder argues that after his transfer to the Austin facility, Goodale and Lovelace began an identical regime of bogus write-ups, restrictions from meeting with an attorney for his social security disability case, and false reports of parole violations. However, Ponder fails to adequately allege retaliatory intent. Neither Goodale nor Lovelace were present at the Fort Worth facility at the time of Ponder's successful grievance proceeding or had any knowledge of the circumstances above. Ponder simply presumes that the retaliatory animus that allegedly fueled the officials at the Fort Worth facility would then fuel unrelated officials at the Austin facility, and fails to allege any another provocation that might give either Goodale or Lovelace intent to retaliate. As Ponder has not sufficiently alleged retaliatory animus against Goodale or Lovelace, his claim should be dismissed.

Though Ponder has sufficiently alleged retaliatory intent against Basham, Serrano, and Parsons, he must also show an adverse act. The Fifth Circuit has held that "acts, though maybe

motivated by retaliatory intent, [that] are so *de minimus* that they would not deter the ordinary person from further exercise of his rights . . . do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim." *Morris v. Powell*, 449F.3d 682, 686 (5th Cir. 2006). Further, "[c]laims of retaliation must . . . be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Woods*, 60 F.3d at 1166 (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)). Accordingly, the last question for the Court is whether Ponder has sufficiently alleged an adverse act by Basham, Serrano, and Parsons that would be more than *de minimus*.

1. **Interference with Mail**

First, Ponder's assertion that Parsons retaliated by interfering with his mail should be dismissed. To establish that a claim for retaliation alleges a harm that is more than *de minimus*, the inmate must show that the retaliatory actions would deter a "person[] of ordinary firmness" from the further exercise of his rights. *Morris*, 449 F.3d at 682. This requirement "weed[s] out only inconsequential actions and is not a means to excuse more serious retaliatory acts by prison officials." *Id.* Parson's failure to call his name at mail call and follow procedures for unclaimed mail would not deter a person of ordinary firmness from further exercising his rights. Moreover, though Ponder's allegations are less than clear, it appears that the interference only occurred for a period of about two weeks in May. *Compare* Dkt. No. 7 (describing that he realized the interference sometime in mid- to late-May and that it began after returning from a seven day stay at the hospital) *with* Dkt. No. 58-1 at 3 (noting that Ponder was taken to the hospital on April 23). This short period in which Ponder did not receive his mail would clearly not be more than *de minimus*. *See Arnold v. Perez*, No. 3:12-cv-1677, 2013 WL 1196677, at *3 (D. Conn. Mar. 22, 2013) (noting that a delay

15

in receipt of the inmate's mail of several weeks would not support a claim for retaliation); *Morris*, 449 F.3d at 687 (finding that the temporary move of one week to an undesirable job was not sufficient to allege retaliation). Moreover, Ponder's claims of damages resulting from the delay are speculative, at best, and would not raise the acts to a cognizable claim for retaliation.

Nor would his assertions support an independent First Amendment claim for interference with his mail. As addressed in this Court's previous Report and Recommendation, inmates do not possess a right to the unrestricted freedom of receipt and transmission of mail. *Adams v. Ellis*, 197 F.2d 483, 485 (5th Cir. 1952). Furthermore, a prison official's failure to follow the prison's mail policies or procedures does not, by itself, result in a constitutional violation. *See Myers v. Klevenhagen*, 97 F.3d 91, 95 (5th Cir. 1996). Rather, Ponder must show that Parsons's failure to follow Avalon's mail policies led to him suffering a constitutional harm as a result of being deprived of his mail. *See Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988). Ponder is unable to do so, merely alleging that he was deprived of $14,000 of back pay for disability insurance. However, Ponder had no property interest in the continued receipt of these benefits. *See Mathews v. Eldridge*, 424 U.S. 319, 340-41 (1976). More importantly, Ponder's complaint does not show that, but for Parsons's interference, he would have received these benefits. *See Richardson*, 841 F.2d at 122 (claim for interference was unsupported because there was insufficient evidence to suggest that prison official's intentional interference was the cause of prisoner's delay in receiving legal mail). Finally, although Parsons's actions might have deprived Ponder of the reasonable opportunity to receive the assistance of an attorney, a violation of an inmate's First Amendment right to the courts is only cognizable where the inmate alleges that his ability to pursue a non-frivolous, arguable legal claim was hindered. *Brewster v. Dretke*, 587 F.3d 764, 769 (5th Cir. 2009). As Ponder's

16

complaint fails to demonstrate that a constitutional harm resulted from Parsons's interference with his incoming and outgoing mail, the Court recommends that this claim be dismissed.

## 2. Discouragement from Filing Grievances

Further, Ponder is unable to show that Parsons, Serrano, and Basham disregarded Ponder's claims or discouraged him from filing new grievances. Ponder contends that the defendants conducted "kangaroo hearings" on his grievance complaints, ordered him to stop filing grievances, and ignored eyewitness accounts to the misbehavior asserted in the grievances. Though these actions, if true, might rise above the *de minimus* standard required, Ponder's conclusory allegations are insufficient to survive the defendants' motion for summary judgment.

A court must view claims of retaliation such as this with skepticism. *Woods*, 60 F.3d at 1166. In the defendants' motion for summary judgment, Serrano provided an affidavit, which states in relevant part:

> In early May 2012, during a two-week period, Mr. Ponder filed approximately nine grievances against personnel at the facility. On May 13, 2012, Mr. Ponder filed a grievance against a client monitor after she reported that he was smoking in an unauthorized area and refused to cooperate with her orders to stop smoking. Subsequent review of surveillance video confirmed Mr. Ponder was smoking in an unauthorized area. On that same day, Mr. Basham contacted TDCJ to ask them to speak to Mr. Ponder about his unproductive and belligerent behavior. Mr. Ponder was relocated from the Center to another Avalon facility in Austin on or about June 9, 2012.

Dkt. No. 58-1 at 3. In the above paragraph, Serrano describes the background of one of the nine grievance proceedings that Ponder alleges were dismissed in retaliation for his previous successful claim. However, Serrano describes an instance where the grievance was denied because it was frivolous. Ponder must show that retaliation was the but for cause of the dismissal, but has not done so. *See Woods*, 60 F.3d at 1166; *Walker v. Savers*, 658 F. App'x 720, 727 (5th Cir. 2016). The law

17

clearly does not provide a remedy for an inmate simply because his complaint was unsuccessful. *Geiger v . Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (holding that an inmate has no "federally protected liberty interest in having [his] grievances resolved to his satisfaction"). Serrano's affidavit provides sufficient evidence to show that the dismissal of Ponder's claims was not retaliatory; rather, Ponder's grievances were denied because the decision-makers determined they did not have merit. Further, Ponder does not argue that his grievances were dismissed without process; rather, he argues that the process given was a sham. Yet, in the instance described above, the grievance was dismissed for good cause. Thus, the defendants have provided sufficient evidence to show that the dismissal of his grievances was not retaliatory. Moreover, Ponder never filed an affidavit or summary judgment evidence to rebut the defendants' evidence. In fact, Ponder never actually explains the exact misconduct of which he complained or how the process was deficient or improper. He failed to provide anything more than conclusory allegations of misconduct, which are insufficient to survive a motion for summary judgment.

Similarly, Ponder's allegations that he was ordered to stop filing grievances also fails. Serrano's affidavit states that Basham asked Texas Department of Criminal Justice (TDCJ) to speak with Ponder about his abuse of the grievance system. In a two-week period, Ponder filed nine grievances; this is clearly sufficient to prompt some action on the part of the supervisors at the facility. A claim for retaliation cannot not encompass a situation in which a supervisor at a facility advises an inmate of the consequences of his abuse of the grievance procedures. *See Ordaz v. Lynaugh*, 20 F.3d 171, *1 (5th Cir. 1994) (holding that the prison rules limiting the number of grievances from one inmate to which it would respond to three per week was a legitimate policy aimed at limiting vexatious and frivolous grievance filings); *Gonzalez v. Currie*, No. 2:13-CV-201,

18

2014 WL 222353, *5 (S.D. Tex. Jan. 21, 2014) (finding that a verbal reprimand was insufficient to allege a claim for retaliation). This is to be differentiated from an instance in which an inmate is threatened or harassed for his non-frivolous use. *See Bibbs v. Early*, 541 F.3d 267, 273 (5th Cir. 2008) (finding that a statement by a guard that "[i]f you all [inmates] would stop writing grievances you would not have to worry about it being cold" was sufficient to show retaliation). Ponder has not given the Court any reason to believe that the latter, as opposed to the former, occurred here. Instead, Serrano's affidavit specifically says otherwise. Ponder's conclusory pleadings are therefore insufficient to show a genuine issue of material fact. Accordingly, the Court should grant summary judgment on Ponder's retaliation claim.

## IV. RECOMMENDATION

In conclusion, the Court **RECOMMENDS** that the District Judge **GRANT IN PART** and **DENY IN PART** Defendants' Motion for Summary Judgment (Dkt. No. 58), **GRANT IN PART** and **DENY IN PART** Defendants' Motion to Dismiss (Dkt. No. 59), and **DENY AS MOOT** Plaintiff's Motion to Deny Dismissal to Defendants in Answer to Defendants' 12(b)(6) Motion (Dkt. No. 69). In particular, the Court **RECOMMENDS** the District Judge **DISMISS** Ponder's claims for (1) false imprisonment against Basham and Lovelace, (2) interference with his mail against Parsons, (3) retaliation against Lovelace and Goodale, and (4) vicarious liability against Smith and Avalon for failure to state a claim; and **GRANT** summary judgment for Ponder's remaining claim of retaliation against Parsons, Serrano, and Basham.

## V. WARNINGS

The parties may file objections to the Recommendations contained above. A party filing objections must specifically identify those findings or recommendations to which objections are

being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 15th day of June, 2017.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE